OPINION OF THE COURT
 

 Smith, J.
 

 In these two unrelated criminal cases, combined for the purpose of this appeal, the primary issue is whether the defendants were denied their constitutional rights to due process and to confront the witnesses against them when a Judge who presided over the original proceeding also presided over a reconstruction hearing. In both cases, the Appellate Division found no constitutional error. For the reasons that follow, we agree with the Appellate Division, and affirm in both cases.
 

 People v Alomar
 

 In 1990, defendant Carlos Alomar was tried in Supreme Court, Bronx County, and convicted by a jury of murder in the second degree (Penal Law § 125.25 [1]). He was thereafter sentenced to an indeterminate term of imprisonment of 25
 
 *243
 
 years to life, and, claiming a violation of his constitutional rights under
 
 Batson v Kentucky
 
 (476 US 79), he prepared an appeal. However, when it became evident that the voir dire minutes of the trial had been lost, defendant moved in the Appellate Division for a summary reversal of his conviction or, in the alternative, for a hearing to reconstruct the minutes of the voir dire proceeding. By order of the Appellate Division, defendant’s latter request was granted and the case remanded to the trial court for further proceedings.
 

 During the reconstruction hearing, testimony regarding the voir dire proceeding was supplied both by the Assistant District Attorney who had tried the case and by defendant’s former trial counsel. In addition, many of the venirepersons appeared and again provided to the court their pertinent background information. As the hearing proceeded, however, the Judge, who had also presided over the original trial, made clear that he intended to rely on his own recollection of the prior proceeding in his reconstruction of the record. Defendant objected and called for the Judge’s recusal, arguing that it was improper for a Judge to serve as both fact witness and trier of fact. The Judge declined to recuse himself and, at the close of the reconstruction hearing, placed his detailed recollections of (reconstructed) facts on the record. The record was then certified to the Appellate Division for appeal.
 

 Over one dissent, the Appellate Division affirmed, with the majority concluding that “[t]he original trial judge properly presided over the reconstruction hearing and thus the defendant’s recusal motion was properly denied” (245 AD2d 219, 220). The dissent, on the other hand, concluded that the Judge should not have presided over the reconstruction hearing because he “was a witness to the proceedings upon which the adjudication of defendant’s
 
 Batson
 
 claim was premised” and because his participation “deprive [d] the defendant of his due process right to have his claim decided by a neutral and detached magistrate and of his right to confront witnesses”
 
 (id.,
 
 at 220-221). The Chief Judge of this Court granted leave to appeal.
 

 People v Morales
 

 In 1994, defendant Adele Morales was tried in Supreme Court, New York County, and convicted by a jury of attempted robbery in the first-degree (Penal Law §§ 110.00, 160.15 [3]) and criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]). She was thereafter sentenced, as a second
 
 *244
 
 felony offender, to concurrent terms of imprisonment of four to eight years and one year respectively, and she appealed claiming error in the trial court’s charge to the jury. In the Appellate Division, defendant argued that the trial court’s reasonable doubt charge to the jury diluted the People’s constitutionally mandated burden of proof. In particular, defendant pointed to four places in the trial transcript where the Trial Judge told the jury that the People did not have to prove her guilt “beyond all reasonable doubt.” Claiming the four transcript references to be in error, the People moved, in response, to enlarge the appellate record to include a supporting affidavit from the trial court stenographer or, in the alternative, for an order remanding the case to the trial court to reconstruct and settle the record. By order of the Appellate Division, the People’s latter request was granted and the case remanded to the trial court for further proceedings.
 

 Prior to the start of the reconstruction hearing, defendant moved to have the Trial Judge recused and the matter transferred to another court. Defendant argued that because the sole issue of the hearing pertained to the conduct of the Trial Judge, the Judge himself was a potential witness to be subjected to cross-examination, and that her right to confrontation and a fair hearing required his recusal. Relying on the First Department’s ruling in
 
 People v Carney
 
 (73 AD2d 9,
 
 appeal after remand
 
 86 AD2d 987,
 
 revd on other grounds
 
 58 NY2d 51), the court declined recusal and the hearing ensued, with the sole testimony being provided by the trial court stenographer.
 

 At the hearing, the court stenographer testified that the four disputed transcript references to the word “reasonable” were made by her in error. At the close of the hearing, the Trial Judge concluded, based on his own recollections and notes and the testimony of the court stenographer, that the four disputed references were indeed errors. Thus, the Trial Judge settled the record by omitting the disputed references from the transcript, and, as modified, he certified the transcript for appeal. Upon defendant’s return to the Appellate Division, a unanimous Court affirmed, concluding that “[t]he trial court appropriately declined to recuse itself from the resettlement proceeding and properly resettled the transcript,” and that the earlier challenged charge represented transcription errors (244 AD2d 300). A Judge of this Court granted defendant leave to appeal.
 

 
 *245
 
 Discussion
 

 Defendants contend that the Trial Judges, by presiding over trial and reconstruction hearing, deprived them of their State and Federal due process rights to a neutral and detached Jurist, to a fair hearing, and to the right to confront the witnesses against them (see, NY Const, art I, § 6; US Const 6th, 14th Amends). For support, defendants rely heavily on the 1955 decision of the United States Supreme Court in
 
 In re Murchison
 
 (349 US 133). In
 
 Murchison,
 
 a State Judge, sitting as a “one-man grand jury,” charged two witnesses summoned to appear before him with peijury and contempt. He thereafter ordered the two men to return and show cause why they should not be punished. The same Judge then tried both individuals in open court, convicted and sentenced them for criminal contempt. The Supreme Court held that the procedure violated the defendants’ due process rights. In analyzing the issues, the Court concluded, “It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations. * * * Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused”
 
 (id.,
 
 at 137).
 

 The cases at bar are substantially different from the situation addressed by the Supreme Court in
 
 Murchison
 
 where the Trial Judge served in the roles of complainant, indicter, prosecutor and Judge, a situation at odds with the notion of fundamental fairness. Here, the Judges served only to fulfill the proper judicial role of passing upon the accuracy of the records of proceedings before them
 
 (see,
 
 CPL 460.70 [1]; CPLR 5525 [c], [d]; Judiciary Law § 7-a;
 
 People v Roldan,
 
 96 AD2d 476, 477,
 
 appeal after remand
 
 99 AD2d 410,
 
 affd
 
 64 NY2d 821).
 

 Defendants cite to cases in which a reconstruction hearing was held before a different Judge
 
 (see, e.g., People v Jones,
 
 220 AD2d 356,
 
 lv denied
 
 87 NY2d 974;
 
 People v Koberstein,
 
 216 AD2d 868;
 
 People v Michalek,
 
 218 AD2d 750,
 
 lv denied
 
 86 NY2d 874;
 
 People v Parchment,
 
 218 AD2d 752,
 
 lv denied
 
 87 NY2d 906;
 
 People v Law,
 
 202 AD2d 691), as well as cases where it was specifically decreed that a different Judge preside
 
 (see, People v Armlin,
 
 37 NY2d 167, 173;
 
 People v McDaniel,
 
 168 AD2d 926, 928,
 
 lv denied
 
 76 NY2d 861;
 
 People v Basora,
 
 90 AD2d 851, 852). Here, however, we deal not with what
 
 *246
 
 procedures might be preferred in light of particular factual circumstances, but rather with what is constitutionally required.
 
 [1]
 

 Recusal, as a matter of due process, is required only where there exists a direct, personal, substantial or pecuniary interest in reaching a particular conclusion
 
 (see, Tumey v Ohio,
 
 273 US 510, 523), or where a clash in judicial roles is seen to exist
 
 (see, In re Murchison,
 
 349 US 133,
 
 supra).
 
 Here, the Judges, sought only to assure that their stenographic records were certified as accurate. No such interest on the part of these Judges is shown in these records
 
 (see, People v Moreno,
 
 70 NY2d 403).
 

 Nor can it be said that the judicial roles conflicted impermissibly with the notion of fundamental fairness. While “our system of law has always endeavored to prevent even the probability of unfairness”
 
 (In re Murchison, supra,
 
 at 136;
 
 see also,
 
 Judiciary Law § 14 [forbidding New York Judges from taking part in proceedings in which they have an interest in the outcome]), the bias which defendants allege exists here — that the Judges naturally wanted to avoid embarrassment and protect the criminal convictions — falls decidedly short of the mark
 
 (see, Burrell v Swartz,
 
 558 F Supp 91, 92 [New York procedure of having Trial Judge settle the trial court transcript “was fair and fully met the requirements of due process”];
 
 Curro v Watson,
 
 884 F Supp 708 [same],
 
 affd
 
 100 F3d 942).
 
 [2]
 
 Therefore, under the circumstances presented, recusal, as a matter of due process, was not required.
 

 Alternatively, defendants allege that the Trial Judges, by also presiding over the reconstruction hearings and relying on their own recollections, deprived them of their constitutional right to confront the witnesses against them (NY Const, art I, § 6; US Const 6th Amend). Defendants again rely on
 
 Murchison,
 
 as well as
 
 Tyler v Swenson
 
 (427 F2d 412 [8th Cir 1970],
 
 supra)
 
 and
 
 Lillie p United States
 
 (953 F2d 1188 [10th Cir 1992],
 
 appeal after remand
 
 40 F3d 1105). We conclude that defendants’ rights were not violated.
 

 
 *247
 
 Under the particular circumstances of these reconstruction hearings, there was no right to confront the Trial Judges as witnesses against the accused
 
 (see, People v Hameed,
 
 88 NY2d 232, 239 [under Confrontation Clause analysis, prosecutors testifying at a
 
 Batson
 
 hearing were not considered witnesses against the accused],
 
 cert denied
 
 519 US 1065). Like the prosecutors in
 
 Hameed,
 
 here the Trial Judges were not “testifying as witnesses ‘against’ the defendants”
 
 (id.,
 
 at 239), but were instead laboring to elucidate what originally took place before them. Contrary to defendants’ claims,
 
 Tyler
 
 and
 
 Lillie
 
 are distinguishable from the situations at bar.
 

 In
 
 Tyler
 
 (427 F2d 412,
 
 supra),
 
 the Eighth Circuit Court of Appeals reversed a District Court’s denial of habeas corpus and remanded the case for a new post-conviction evidentiary hearing into the circumstances of the defendant’s plea. The Court ordered that the new hearing be held before a Judge other than the one before whom the plea had been entered. The defendant had claimed that prior to the entry of his plea, the Trial Judge threatened him with a greater sentence if found guilty than if convicted by guilty plea. Following the entry of his guilty plea, the defendant filed an application for post-conviction relief, claiming that his plea was “involuntarily made”
 
 (id.,
 
 at 413). A State court evidentiary hearing in the matter was held, albeit before the same Judge who had allegedly made the threat and taken the guilty plea. Following denials of relief at both the State and Federal District Court levels, the Court of Appeals reversed.
 

 In
 
 Lillie v United States
 
 (953 F2d 1188 [10th Cir 1992],
 
 appeal after remand
 
 40 F3d 1105,
 
 supra),
 
 the Tenth Circuit Court of Appeals held, in the context of a civil case tried by the court, that the Trial Judge’s “off-the-record fact gathering”
 
 (id.,
 
 at 1191) essentially rendered the Judge an evidentiary witness, which under the circumstances required a new trial. Citing to State cases involving off-the-record fact gathering, the Tenth Circuit concluded that the solo excursion by the Trial Judge with the goal of viewing the accident scene constituted an erroneous admission of evidence into the trial.
 

 In a hearing to reconstruct and settle the record of a trial court proceeding, as the final arbiter of the record the Trial Judge is not, in constitutional terms, a witness, but rather the official who certifies to the appellate court, if he or she can, what originally took place below
 
 (see, People v Carney,
 
 73 AD2d 9, 12,
 
 appeal after remand
 
 86 AD2d 987,
 
 revd on other grounds
 
 58 NY2d 51,
 
 supra).
 
 Unlike
 
 Tyler,
 
 where the “propriety of the
 
 *248
 
 judge’s prior conduct” was at issue (427 F2d,
 
 supra,
 
 at 417;
 
 see also, People v Seminara,
 
 58 AD2d 841,
 
 supra; People v Edwards,
 
 53 AD2d 647,
 
 supra; People v Melendez,
 
 47 AD2d 662;
 
 People v Pendergrass,
 
 43 AD2d 592,
 
 supra),
 
 and
 
 Lillie,
 
 where off-the-record judicial fact gathering was involved, here — in confronting misplaced voir dire minutes and jury charge transcription errors — these Judges engaged in nothing more than an effort to ensure that their records were certified as true. In neither case did the Trial Judge serve as a witness against the accused
 
 (compare, In re Murchison,
 
 349 US 133,
 
 supra; Tyler v Swenson,
 
 427 F2d 412, 414,
 
 supra
 
 [Trial Judge contradicted the testimony of a defense witness by his “statement that petitioner’s mother in fact had never even been in the court’s chambers”]).
 

 Defendants’ remaining contentions are without merit.
 

 Accordingly, in each case, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 In each case: Order affirmed.
 

 [1]
 

 . Nor are we required, under the circumstances presented, to address those cases in which it was held, based upon a defendant’s specific allegations of off-the-record promises or other judicial improprieties, that a new hearing need be held before a different Judge (see,
 
 e.g., People v Seminara,
 
 58 AD2d 841;
 
 People v Edwards,
 
 53 AD2d 647;
 
 People v Melendez,
 
 47 AD2d 662;
 
 People v Pendergrass,
 
 43 AD2d 592; see
 
 also, Tyler v Swenson,
 
 427 F2d 412 [8th Cir 1970]).
 

 [2]
 

 . Notably, the identical procedure is authorized under the Federal appellate rules (see, Fed Rules of App Pro, rule 10 [e]; 20 Moore’s Federal Practice 3d, § 310.40).