This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 61
The People &c.,
          Respondent,
        v.
Jamar Bethune,
          Appellant.



          Ryan G. Blanch, for appellant.
          Jodi L. Mandel, for respondent.




WILSON, J.:

          Defendant Jamar Bethune challenges Supreme Court's granting of the People's motion to resettle his trial transcript without holding the reconstruction hearing that Mr. Bethune requested.  Although better practices could have been observed, Supreme Court did not, on the facts of this case, abuse its

- 1 -

discretion by correcting the record without the benefit of a reconstruction hearing.  Accordingly, the Appellate Division order upholding the judgment of Supreme Court should be affirmed.

I.

The trial judge is the "final arbiter of the record" certified to the appellate courts (People v Alomar, 93 NY2d 239, 247 [1999]; see Judiciary Law § 7-a).  Parties to an appeal are entitled to have that record show the facts as they really happened at trial, and should not be prejudiced by an error or omission of the stenographer (People v Buccufurri, 154 AD 827, 828 [1913]).  Judges confronted with allegations of error in that record -- especially allegations of their own error -- may hold a reconstruction hearing with the parties, any witnesses or evidence the court deems helpful (cf. CPLR 5525 [c] [1]).  Here, the court instead relied on the stenographer's official certification of accuracy of the amended transcript, the affidavit of counsel recounting a conversation with that reporter as to the reason for the discrepancy in the two transcripts, and the context of the purported error. On this particular factual record Supreme Court did not act outside its discretion to resettle the transcript without a hearing.

As we have said, "[n]ot every dispute about the record mandates a reconstruction hearing" (People v Santorelli, 95 NY2d 412, 424 [2000]).  In certain circumstances, Supreme Court can deny a party's request for such a hearing when it concludes the

exercise is not necessary to elucidate what originally took place.  Under the facts in Santorelli, those circumstances were the "papers and record submitted, together with the court's clear recollection" of the proceedings (id.).  Although the facts of that case led us to emphasize the confident recollection of its trial judge, nothing in Santorelli required a reconstruction hearing absent that arbiter's perfect recall.  Even when a judge's recollection of the disputed or missing portion of a transcript is unclear, other information may suffice to allow him or her to resettle the record without a reconstruction hearing.

## II.

Here, although Supreme Court did not indicate that it had a clear recollection of the trial,[1] it had sufficient information before it to resettle the transcript without the benefit of a hearing.

Mr. Bethune, an 18-year-old who shot a 13-year-old in front of the child's family and others, was convicted after a jury trial of murder in the second degree and criminal possession of a weapon in the second degree.  He contends on appeal that Supreme Court denied him a fair trial by providing a supplemental jury instruction that, according to the trial transcript as originally certified by the court reporter, described intentional

---

[1] Cf. Santorelli, 95 NY2d at 423-24 (describing details of the court's "very definite recollection" of the missing sidebar conference).

murder as an <u>un</u>intentional crime and thereby relieved the People
of the burden of establishing a crucial element of the charge.

On learning of Mr. Bethune's contention, the People,
believing the apparent defect in the instruction to be the result
of a typographical error, drew the court reporter's attention to
the contested words in that instruction and asked the reporter to
consult her notes.  Although the court reporter provided neither
an affidavit nor her notes to the court or counsel, the Assistant
District Attorney submitted an affirmation that the reporter
advised the People that her notes showed that the two relevant
instances of the word "unintentional," as well as the three
others to which her attention had been drawn, should instead have
been transcribed as "intentional."[2] The reporter prepared a
corrected certified transcript in which those five instances
reflected her stenographic notes.  Presented with that
affirmation and certified corrected transcript, Supreme Court
ruled, over Mr. Bethune's objection, that the record would be
resettled in accordance with the corrected transcript without a
reconstruction hearing.

Several factors support the Appellate Division's
conclusion that Supreme Court acted within its discretion to
resettle the transcript on the basis of the information before

---

[2] Three of the transcription errors misrepresented the words
of the trial judge: first during a colloquy with the attorneys,
and twice during the supplemental jury instruction. The
subsequent two errors misrepresented words defense counsel spoke
outside the presence of the jury.

it.  The trial judge could rely not only on the reporter's certification of the corrected transcript, but also on undisputed portions of that transcript, including: the accurate balance of the charge;[3] the fact that two of the five alleged misstatements were attributed to defense counsel, not the court; and, most significantly, the repeated failure of any party to object to what would have been prominent misstatements of the law. Furthermore, as there was no suggestion during oral argument on the motion that any person present at the trial five years earlier could recollect what words were spoken, it is not clear what evidence beyond the reporter's original stenographic notes might have been obtained through a hearing.

Although it would have been preferable for the court to have received an affidavit from the court reporter, rather than an affidavit of counsel recounting a conversation with that reporter, we cannot say that Supreme Court acted outside its discretion to resettle the transcript without a hearing.

Mr. Bethune's remaining argument has been rendered academic by our decision.

Accordingly, the order of the Appellate Division should be affirmed.

---

[3] After the alleged misstatement, Supreme Court instructed the jury that "a person is guilty of murder in the second degree when with the intent to cause the death of another person he causes the death of such person.  The term intent used in this definition . . .  means conscious objective or purpose."

People v Bethune

No. 61


FAHEY, J. (concurring):

I join the majority opinion in full, but write separately to express my view concerning the "better practices that could have been observed" in this case (majority op at 1).

Appeals in which the accuracy of a transcript is challenged and the parties "cannot agree on . . . amendments to the transcript" (CPLR 5525 [c] [1]) pose unusual difficulties. A trial judge confronted with allegations of error in a record certified to the appellate court has the "duty . . . to pass upon the accuracy of the record" (People v Buccufurri, 154 App Div 827, 828 [2d Dept 1913]; see generally People v Alomar, 93 NY2d 239, 245, 247 [1999]). As a general matter, a judge is best able to fulfill that responsibility by holding a reconstruction hearing that affords the judge and the litigants the benefit of all relevant evidence and a full adversarial process. Short of each party's stipulation to revisions of the transcript, a reconstruction hearing will in many cases constitute the best means of resolving apparent errors in a record (see e.g. Alomar, 93 NY2d at 243-244; People v Russell, 55 AD3d 940, 940-941 [3d Dept 2008], lv denied 11 NY3d 900 [2008]; People v Marzug, 280 AD2d 974, 974 [4th Dept 2001], lv denied 96 NY2d 904 [2001];

- 1 -

People v Wiggins, 227 AD2d 918, 918-919 [4th Dept 1996], lv
denied 88 NY2d 1072 [1996], reconsideration denied 89 NY2d 1016
[1997]; cf. People v Mitchell, 136 AD3d 401, 401-402 [1st Dept
2016], lv denied 27 NY3d 1003 [2016], reconsideration denied 27
NY3d 1136 [2016]).

      A reconstruction hearing is especially advisable when,
as here, the allegations are of the trial judge's own error,
because such a hearing enables the judge to avoid the appearance
of impropriety.  It is important to preserve not only the actual
accuracy of court transcripts, but also the appearance of a fair
and rigorous process for the reconstruction of portions of
transcripts affected by human failures (see generally 22 NYCRR §
100.2 ["A judge shall avoid impropriety and the appearance of
impropriety in all of the judge's activities"]).

      A second recommended practice, to be followed by the
litigants, relates to the situation in which a party to a
criminal appeal believes (as in this case) that the party's
adversary is relying on an inaccurate transcription of the trial.
In this situation, it would be preferable for the party to notify
the trial judge, rather than the reporter, of the disputed
portions of the transcript.  This manner of notice allows the
trial judge to ask the court reporter to review his or her
stenographic notes, provide copies for inspection to both
parties, and, if useful in the judge's discretion, provide
testimony as to the proper interpretation of the notes.

In this appeal, the trial court "relied on the stenographer's official certification of accuracy of the amended transcript, the affidavit of counsel recounting a conversation with that reporter as to the reason for the discrepancy in the two transcripts, and the context of the purported error" (majority op at 2).  While I cannot say that the trial court acted outside its discretion in the circumstances of this case, the process was far from optimal.  The trial court should at the very least have required an affidavit from the court reporter, explaining the discrepancies between the transcripts, rather than merely an affirmation from the assistant district attorney summarizing what the court reporter told her.  The better practice would have been to conduct a hearing in which defense counsel could cross-examine the reporter about the errors.  In that way, counsel can explore, and create a record on, the issue whether a transcript dispute turns on a stenographer's error or an actual mistake by the court that implicates defendant's right to a fair trial.

People v Jamar Bethune

No. 61

GARCIA, J. (concurring):

I agree fully with the majority opinion. I write separately to express an opposing view with respect to the "recommended practice[s]" discussed in Judge Fahey's concurring opinion (concurring op at 2). Rather than a "full adversarial" hearing (concurring op at 1), I believe the appropriate practice

- 1 -

is best determined by the trial court on the facts and circumstances of a given case, with due regard for judicial resources. As the majority notes, "[n]ot every dispute about the record mandates a reconstruction hearing" (majority op at 2, citing People v Santorelli, 95 NY2d 412, 424 [2000]; see also People v Glass, 43 NY2d 283, 286 [1977]).  Similarly, I would not recommend involving a trial judge in some form of dialogue with a court reporter unless a dispute as to any proposed change to the transcript arises.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Wilson.  Chief Judge DiFiore and Judges Rivera, Stein, Fahey and Garcia concur, Judge Fahey in a concurring opinion and Judge Garcia in a separate concurring opinion in which Chief Judge DiFiore concurs.

Decided June 8, 2017